14

## PAUL BUNYAN RURAL TELEPHONE COOPERATIVE
## v. LEWIS A. PIERCE, d. b. a.
## LAPORTE TELEPHONE COMPANY.

115 N. W. (2d) 661.

June 1, 1962—No. 38,468.

*Herbert E. Olson,* for appellant.
*Cann & Schmidt,* for respondent.

THOMAS GALLAGHER, JUSTICE.

These proceedings were initiated before the Railroad and Warehouse Commission for determination of boundaries of an area in Hubbard County to be served by petitioner, Paul Bunyan Rural Telephone Cooperative, a cooperative association, herein referred to as Paul Bunyan Cooperative; and for an order directing Lewis A. Pierce, doing business as Laporte Telephone Company, referred to herein as Laporte Company, to refrain from doing business in such area and requiring it to remove its telephone lines and equipment therefrom.

On May 6, 1960, the commission made its order awarding Paul Bunyan Cooperative exclusive rights to furnish telephone service within a certain described area in northern Hubbard County set forth in a map attached to such order; and directing Laporte Company to remove its telephone lines and equipment therefrom.

Upon appeal from such order by Laporte Company, the district court directed that the commission's order be adjudged null and void in that the commission was without jurisdiction to hear or determine the matter. In a memorandum made a part of its order the court stated:

"In my consideration of the issues here. involved on appeal, I have, as far as possible, from the mass of material presented, attempted to set forth in the foregoing findings the factual matters leading up to the appeal. In view of the decision which I have reached they are of little or no value except in so far as the same are explanatory of the conflicting claims and interests of the litigants here involved. * * *

"* * * the inquiry and jurisdiction of the Court is limited to a determination:

"(1) Whether or not the Commission acted under authority of law, and if so,

"(2) Whether or not the order appealed from is unjust, unreasonable and not supported by the evidence, * * *.

* &ast; * * *

"The authority conferred upon the Commission with respect to areas to be served by telephone companies is stated in M. S. A. 237.16 which provides as follows:

" '* * * the commission shall have the exclusive right to grant authority to any telephone company to construct telephone lines or exchanges for furnishing local service to subscribers in any municipality of this state, * * *. No lines or equipment shall be constructed or installed for the purpose of furnishing local rural or toll telephone service to the inhabitants or telephone users in any locality in this state, where there is then in operation in the locality or territory affected thereby another telephone company already furnishing such service, without first securing from the Commission a declaration, after a public hearing, that public convenience requires such proposed telephone lines or equipment; * * *.'

"* * * The Commission has the exclusive power to authorize service in municipalities. It may authorize duplication of service in a rural area or locality already receiving service upon a finding of public convenience; and undoubtedly could prescribe the area of such duplication in a proper proceeding, but I can find no authority in the law which specifically or by implication confers upon the Commission the duty or authority to make a determination of the bound-

ary to be served by a company in a proceeding brought for that purpose. There is no authority given, no procedure therefor set out, and no standards by which such determination should be made. The act does not require authority from the Commission as a condition precedent for entering an unserved area, nor is there any provision for Commission determination of disputes between companies over the territory to be served.

\* \* \* \* \*

"There is also, here, the issue raised by the action which is pending in the District Court between the litigants here involved, upon which issue was joined before the filing of the application upon which the Commission assumed to act. While the issue of primary jurisdiction is there raised, no determination has been made, nor is there any claim that the Court is without jurisdiction. This matter was properly before the Commission on motion at the inception of these hearings before the Commission, but notwithstanding, the Commission presumed to act.

"It is my candid opinion that this was error for the following reasons:

"(1)    That no authority is granted to the Commission in the act to settle disputes between companies involved in area disputes.

\* \* \* \* \*

"(6)    That once a Court of competent jurisdiction acquires jurisdiction its authority continues until the matter is disposed of, and no other body, even assuming that it has authority, can properly interfere.

\* \* \* \* \*

"That the pendency of the action in the District Court deprived the Commission of jurisdiction in this matter, and that the Commission had no authority to interfere. \* \* \*

"That the Commission has in the instant case exceeded the powers granted to it by statute; and that it is wholly without power and authority to determine boundaries to be served by a company in a proceeding brought for that purpose and that by reason thereof the Order of the Commission is of no legal force nor effect."

The prior action referred to by the court in its memorandum had been instituted by the Laporte Company against Paul Bunyan

Cooperative. Therein Laporte Company sought to restrain Paul Bunyan Cooperative from furnishing telephone service in substantially the same area that is involved in the present proceedings. This action has never been tried because there the court ordered—

"* * * That said cause be stricken from the trial calendar * * * without prejudice to re-noticing the same for trial at any succeeding term of said Court."

■ Determination of the issues presented here must be dependent upon Minn. St. 1957, § 237.16.[1] This section set forth the specific authority granted to the Railroad and Warehouse Commission with reference to the construction and maintenance of telephone lines and

---

[1] Section 237.16 was extensively amended by L. 1961, c. 637. As so amended, it provides in part:

Subd. 2. "* * * if more than one company files maps indicating service in the same territory, the commission shall, after hearing, on reasonable notice to the interested parties, determine, from such evidence as it may reasonably require, which of such companies shall be entitled to a certificate of territorial authority. In making such determination, the commission shall consider the ability of such company to furnish thereafter reasonably adequate service in the territory in question. * * *"

Subd. 4. "No company shall construct or operate any line, plant or system, or any extension thereof, or acquire ownership or control thereof, either directly or indirectly, without first obtaining from the commission, a determination that the present or future public convenience and necessity require or will require such construction, operation, or acquisition, and a new certificate of territorial authority; provided that this act shall not be construed to require a telephone company operating an exchange in Minnesota to secure a certificate for an extension within any territory within which such company has heretofore filed maps or for substitute facilities within such territories, or for extensions into territories contiguous to that already occupied by such company and not receiving similar service from another company if no certificate of territorial authority has been issued to or applied for by any other company."

Subd. 5. "Any certificate of territorial authority may, after notice of hearing and a hearing, be revoked by the commission, in whole or in part, for the failure of the holder thereof to furnish reasonably adequate telephone service within the area or areas determined and defined in such certificate of territorial authority."

exchanges, and as to the service to be furnished telephone subscribers in connection therewith. It provided that "the commission shall have the exclusive right to grant authority to any telephone company to construct telephone lines or exchanges for furnishing local service to subscribers in any municipality of this state," and that in unorganized areas outside of municipalities, where there is in operation a telephone company furnishing telephone services, the commission shall have the authority, *after a public hearing*, to authorize another telephone company to duplicate such lines and equipment and to furnish telephone service in such area *if public convenience* so requires. Of course, to arrive at an order authorizing such duplication, the commission would be required to hear evidence with respect to this issue at a public hearing. In making a determination therein, it would have to decide (1) if the area involved were then being served by a telephone company; (2) the extent or boundaries of such area; and (3) the sufficiency or adequacy of the service furnished by such company. Testimony determinative of these questions would of necessity relate to the lines and equipment actually installed and in operation; the date of their installation and the names of the owners thereof; the names and locations of subscribers served thereby; and, finally, the extent, efficiency, and type of service furnished to the area and subscribers. With such information the commission would be in a position to determine whether public convenience required its order authorizing duplication of service in the area by some other company.

■ It is also conceivable that the commission might have to determine which of two companies was first in furnishing telephone service within a defined area as a prerequisite for determining whether duplication of telephone service within such area was required for public convenience. Thus, where each of two companies contended that in point of time it was first in furnishing telephone service in the disputed area, before the commission could authorize duplication therein it would first have to determine the question of priority and define the area wherein priority was established. Thereafter it could determine to what extent public convenience justified duplication.

■ But, as the trial court indicated in its memorandum, nowhere

in Minn. St. 1957, § 237.16, is there any provision under which the commission would be authorized to grant *exclusive* rights in a given territory to any telephone company outside of a municipality, or to direct that a company presently serving such an area should remove its lines and equipment therefrom, either because of the inadequacy of its service or otherwise. Under that section as it applied herein, the most the commission could do would be to authorize duplication of lines, equipment, and service in the area under question, and this only *after a public hearing* on the question of public convenience. It must follow that in the instant case the commission was without jurisdiction to make the challenged order. At no time did it order a public hearing. Its order did not relate to duplication of service and equipment, but on the contrary in effect directed that Paul Bunyan Cooperative had *exclusive* rights in an area served in part at least by the Laporte Company. There was no finding that because of inadequacy of service or equipment, or for other reasons, public convenience required that an order of duplication be made. The final directive that Laporte Company, which owned lines and equipment in the area, should remove such lines and equipment was wholly without statutory authority. It is clear that the trial court was correct in vacating the commission's order.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE KNUTSON took no part in the consideration or decision of this case.